## HATTON'S ADM'RS *vs.* JORDAN.

[ASSUMPSIT—CONSIDERATION OF CONTRACT—OYER—COMPETENCY OF WITNESS.]

1. *Consideration, validity and sufficiency of.*—Where plaintiff and defendant were both bound as sureties and endorsers for an insolvent debtor, who was about to make an assignment for the benefit of his creditors, and who refused to make any assignment of which plaintiff did not approve, and which did not place in the preferred class of creditors the debts on which plaintiff was bound ; and in consideration that plaintiff would consent that the debtor might make a deed postponing the claims on which he was bound, and preferring the claims on which defendant was bound, the latter promised to pay a specified sum ; and the deed was made in pursuance of the contract,—*held*, that the contract was supported by a sufficient consideration, was not contrary to any principle of public policy, and was not fraudulent as to the other creditors and sureties of the debtor.

2. *Oyer, when demandable.*—Oyer can only be demanded of those instruments of which, at common law, the plaintiff would have been compelled to make profert ; and where a deed is stated as mere inducement, while the gravamen of the action is the breach of a contract outside of the deed, the defendant is not entitled to oyer of it.

3. *Competency of witness as affected by interest.*—An insolvent debtor, being about to make an assignment, and refusing to make any assignment, without plaintiff's approval and consent, which did not place in the preferred class the debts on which plaintiff was bound, jointly with others, as endorser and surety ; thereupon, in consideration that plaintiff would consent that the debtor might make an assignment postponing the debts on which he was bound, and preferring the debts on which defendant was bound as endorser and surety, the latter promised to pay a specified sum, and the deed was made in pursuance of the contract. *Held*, in an action on the contract, that the debtor was a competent witness for plaintiff.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. THOMAS A. WALKER.

ASSUMPSIT by Fleming Jordan, suing for the use of Daniel B. Turner, against Samuel Hatton ; who having died pending the suit, it was thereupon revived against his administrators. The declaration contained the common counts, and a special count for the breach of a contract which, in substance, was as follows :—One B. M. Lowe, having become insolvent, and being about to make an assignment of his property for the benefit of his creditors, endorsers, and sureties, refused to

Hatton's Adm'rs v. Jordan.

make any assignment which was not approved and sanctioned by Jordan, who was his endorser and surety on debts amounting to $150,000; and unless Jordan, and the debts upon which he was bound, were placed in the preferred class of creditors. Hatton was also endorser and surety for Lowe, in the sum of about $50,000; and in consideration that Jordan would consent and agree that Lowe might make a deed, which would prefer Hatton and the debts on which he was bound, and postpone Jordan and the debts on which he was bound, Hatton promised to pay Jordan $3,750. In pursuance of this contract, Lowe made an assignment, postponing Jordan and the claims on which he was bound, and preferring Hatton and the claims on which he was bound; whereby Jordan was injured, and Hatton was indemnified, to a larger amount than he would otherwise have been.

The defendants craved oyer of the deed made by Lowe, and demurred to the special count in the declaration; but the court refused to grant oyer of the deed, and overruled the demurrer. The defendants then pleaded the general issue, and the statute of frauds; and issue was joined on both of these pleas.

On the trial, the plaintiff offered in evidence the deposition of said B. M. Lowe. The defendants objected to the reading of it, on the ground that the witness was incompetent from interest; but the court overruled the objection, and the defendants excepted.

These rulings of the court are now assigned as error.

R. W. WALKER and WILLIAM COOPER, for the appellants:—

I. The demurrer ought to have been sustained, because,—

1. The declaration alleges, in effect, that the contract was made with the privity of Lowe, since the preference was given by Lowe, in the manner agreed on, "in pursuance of it"; and this being so, the contract is void on principles of public policy. All the indemnity which, under this arrangement, Hatton was to pay Jordan, Lowe would be entitled to as a credit on his debts to Jordan. The contract, then, in substance, was that Lowe would place Hatton in the favored class, and would leave Jordan out, if Hatton, through Jordan, would pay Lowe $3,750. It was paying a premium for

preference ; and if such an agreement had been incorporated in the deed, the deed would have been void.—4 Ala. 380 ; 12 Ala. 103 ; 17 Ala. 549 ; 1 Iredell's Eq. 180. It was, in fact, an agreement to pay back part, to get less than all ; which would be *nudum pactum*.—13 Ala. 232 ; 6 Ala. 480 ; 15 Ala. 700.

The alleged contract is void, because it was a fraud on the other creditors of Lowe. It is alleged, that Lowe had become insolvent, and was about to make a deed, conveying all his property to trustees, to secure *all* his creditors, endorsers, and sureties ; but he refused to make any deed which did not meet Jordan's approbation, and which did not place him in the preferred class. In other words, Lowe refused to secure Hatton, by giving him the preference, unless Jordan was bought off. Jordan was bound, not as a creditor of Lowe, but as " endorser and surety" for him. Lowe was about to prefer, not only Jordan, but the claims on which he was bound; that is, he was going to secure the creditors who held the claims on which Jordan was bound as surety and endorser. These creditors are postponed, and Hatton preferred, as the declaration alleges, "in pursuance of" the agreement between Jordan and Hatton ; which implies, *ex vi termini*, that Lowe was privy to it. By the act of the surety, then, with the knowledge and co-operation of the debtor, the fund which the debtor was about to appropriate for the benefit of the creditor, is applied in discharge of other debts, and the claims of the creditor are postponed. This is effected by means of a *bonus* to the surety, which he receives under a private agreement with the owners of the other debts. If this be not a fraud on the creditors holding the claims on which Jordan was bound, it is difficult to conceive what would be. The debtor can neither reserve part of the effects himself, nor do anything which would carry his power beyond mere preference ; and this must be given according to his unbribed judgment.— Burrill on Assignments, 131–2–5–6; 5 Rawle, 221; 1 Iredell, 490 ; 4 Ala. 378 (381); 12 Ala. 103; 7 Wheaton, 556. The preference of creditors is an allowed object, or result, of a debtor's assignment ; but it is not permitted to be used as a means of accomplishing ends which are not legitimate objects of a debtor's effects. The whole principle is now viewed

Hatton's Adm'rs v. Jordan.

with disfavor.—American Leading Cases, vol. 1, 102; 17 Ala. 556; 11 Wendell, 187; 10 Paige, 224; 2 Barbour, 10; Burrill, 99, 105, 114. Where preference is privately given to one or more creditors over the others, contrary to the principle and professed object of the deed, it is fraudulent and void.— Burrill, 136–7; 5 Bing. 432, 460; 15 Pick. 49; 1 P. Wms. 768. A promise, by one creditor to another, to induce him to withdraw his opposition to the application of the debtor for the benefit of insolvent laws, is void.—Wiggin v. Bush, 12 Johns. 306.

2. The alleged agreement was a fraud on creditors, and therefore void, whether Lowe was or was not privy to it. Its whole scope is just this: Lowe owed certain creditors $150,000, for which Jordan was his surety and endorser; and he also owed other creditors, and had other sureties and endorsers. He was insolvent, and was about to make an assignment, securing the debts on which Jordan was bound; which security, of course, would have enured to the benefit of the creditor not less than the endorser. Being unable to secure all his creditors, the other creditors, to whom Jordan was not liable, prevent the consummation of Lowe's intention to secure those to whom Jordan was liable, by promising a *bonus* to Jordan, the surety; that is, by bribing the surety, they induce Lowe to postpone creditors whom he was about to prefer, and to diminish, to that extent, the source to which such creditors could have looked for the payment of their debts. Although Lowe's deed constitutes no part of the declaration, yet it is not improper to look to it for the purpose of illustrating the dangerous character and fraudulent tendencies of such agreements as that here alleged. Notice the effect of this agreement, as shown by the provisions of the deed, on the creditors holding the claims on which Jordan was bound, and on the other endorsers and sureties bound with him. Note, especially, its effect on the Mannings, and on Wm. Watkins. The liabilities on which the latter was bound, as co-surety with Jordan, and which, by virtue of this agreement, are postponed to the fifth class, and thereby wholly lost, amount to over $27,000. For cases somewhat analogous, see Carrington v. Caller, 2 Stew. 175; Haynes v. Crutchfield, 7 Ala. 189.

II. Lowe was an incompetent witness. If he establish a contract by which Hatton indemnifies Jordan to the amount of $3,750, then Lowe's indebtedness to Jordan is thereby diminished by $3,750. Jordan could not recover of Lowe the entire amount paid by him for Lowe, because the latter could show that he had been indemnified to the extent of $3,750; and although the indemnity comes from third persons, the result is still the same.—1 Green. Ev. §§ 392–7 ; Moore v. Jones, 18 Ala. 232 ; 12 Ala. 592 ; 2 Stew. 17 ; 3 Phil. Ev. 94–5, 133.

By the act of the surety, the fund which the debtor was about to appropriate for the benefit of the creditor, is diverted to a different use ; and in consideration of his consenting to, and thereby effecting this diversion, the surety receives a specific sum by way of indemnity. This is done, without the knowledge or consent of the creditor or co-surety, by private agreement between the surety and an adverse creditor. In such case, the creditor could subject the sum so received by the surety to the satisfaction of his debt : that would be its equitable destiny ; and should Jordan pay off the entire debt for which he was bound, and call on his co-sureties for contribution, they could make him account for the indemnity which he had received. By parity of reason, should he proceed against Lowe, the latter would be entitled to this indemnity as a credit.

" Among creditors, equality is equity ; and any indemnity taken by one is reached in favor of the others, whenever it was intended for the benefit of all, or where the taking of it was a fraud on the others. For they enter into the agreement under the belief of perfect equality, trusting to the same terms of indemnity, and to the united exertion of each to avoid harm severally. Any indemnity, which lessens the ability of the principal to indemnify the others, is a fraud on them."—4 Hawks, 358; 18 Ala. 706 ; 2 U. S. Eq. Digest, 600, § 137.

The first endorser of a bill, on paying it, shall have the benefit of all securities obtained by a subsequent endorser. This is upon the equitable ground, that the original creditor could compel such subsequent endorser to use the security for his benefit ; and any person who occupies the position of

surety to the debtor, is, on paying the debt, substituted to all the rights of the creditor.—7 Ala. 539, 542; 4 Watts, 31; 11 Vesey, 22; 1 Story's Equity, §§ 638–9.

Now Jordan, as the deed shows, was co-surety with the Mannings and with Watkins, and prior and subsequent endorser with them for a very large amount. If he had paid these debts, and called on them for contribution, they could successfully insist that, by his second agreement with adverse creditors, the fund which Lowe was about to apply for their joint benefit, was otherwise appropriated, and all recourse on Lowe rendered hopeless; and that he (Jordan) received, under this agreement, $15,000 from the opposing creditors, and has, to that extent, obtained indemnity. He would be compelled to account for this amount; and as he could not recover full contribution from his co-sureties, so neither could he recover of Lowe the whole amount paid by him. Lowe was, therefore, interested. If the agreement had been to pay Jordan the whole amount for which he was bound, he certainly could not recover contribution from his co-sureties, or indemnity from Lowe. There is no distinction, upon principle, between a promise to pay part, and a promise to pay all.

JAMES ROBINSON and R. C. BRICKELL; *contra*.—1. If there was error in overruling the demurrer to the special count, it was error without injury, since the defendant could have had under the general issue all the benefit that he could have had by his demurrer.—Goodwin v. McCoy, 13 Ala. 277, and cases cited; Sprague v. Morgan, 7 Ala. 954.

2. But there was no error in overruling the demurrer. The promise alleged is supported by a sufficient consideration. Benefit to the promisor, or injury, trouble, prejudice, or inconvenience to the promisee, is a good consideration.— Story on Contracts, § 115; Chitty on Contracts, 29–32, and cases cited. It is manifest that Hatton derived a benefit from this agreement. Jordan's liabilities exceeded $100,000, while Lowe's property was not worth that sum. By excluding Jordan from Hatton's class, Hatton derived a much greater benefit than he could have derived if Jordan had been included in it. But it is not necessary to show a benefit to Hatton, if

it be shown that something of value flowed from Jordan.—Violett v. Patton, 5 Cranch, 150. And it matters not how insignificant the benefit or injury may be, if it is capable of legal estimation.—Story on Contracts, 74 ; 2 Bing. 437 ; 15 Ala. 792 ; 2 Watts, 104 ; 5 Wendell, 25 ; Train v. Gold, 5 Pick. 380.

It is said that this deed is a fraud on Lowe's creditors, because he thereby reserved a benefit to himself ; but the proof of this assumption must be sought outside of the deed, which conveys all his property, absolutely and unconditionally, to the payment of his debts. The contract between Hatton and Jordan furnishes no evidence that Lowe was to take the benefit of the payment to Jordan. By that contract, Jordan secured a benefit personal to himself. He could do with the money what he wished; and there was no stipulation on his part as to what he would do with it. Lowe had the legal power to convey his property so as to pay one or more creditors, either in full, or in such portions as he pleased.—Ashurst v. Martin, 9 Porter, 566 ; Gazzam v. Pointz, 4 Ala. 379 ; Grimshaw & Brown v. Walker, 12 Ala. 103. As he had the power to give preferences, the giving of those preferences cannot affect the deed ; unless, in so doing, he stipulated for a benefit to himself. Having this power, and having promised Jordan to exercise it in his favor, it was clearly competent for Jordan to contract that he would yield his claim, in favor of another, and let him take the benefit of Lowe's property. There is no rule which required Jordan to take indemnity for his co-sureties, or for the creditors. He might, therefore, without violating any duty, refuse to do this without compensation ; and if so, he might certainly do so for a compensation. His consenting to be postponed, did not prevent them from insisting on and obtaining the preference which he waived.

But, even if the deed be fraudulent, Hatton is in no condition to take advantage of it ; for he, jointly with others, derived all the benefits of it, and it does not now lie with him to say that it was fraudulent. Nor can Jordan's rights be affected by any fraud in the deed. His rights did not depend upon the fact of Lowe's making a deed, nor upon the validity or invalidity of the deed. He did not stipulate that Lowe

should make a deed, much less a valid deed; nor did he undertake to procure Lowe to make a deed. If Lowe had never made the deed, Jordan's rights under the contract would have been the same.

3. Oyer of Lowe's deed was properly refused, because no profert of it was made in the declaration; nor could profert properly have been made.—1 Chitty's Pleading, 464–6, and cases cited.

4. To make Lowe incompetent on account of interest, it must be shown that he would be benefited or injured by the result of this suit. Suppose he would be entitled, as against Jordan, to a credit for the amount of Jordan's recovery; then it would follow, as a necessary consequence, that he would be injured to the same extent. For, if he is entitled to such a credit, the recovery against Hatton would give him a right of action against Lowe for its amount. Both of them sustain the same relation to him. But the record does not show that either Jordan or Hatton ever paid any of Lowe's debts; and until they, or either of them, paid these debts, he had no cause of action against Lowe. Then, as there was no debt from Lowe to him, there was nothing upon which Lowe could receive a credit. So far as the proof shows, the original debts of Lowe, with Jordan and Hatton as sureties, are outstanding and unpaid in the hands of the original holders. If they still remain unpaid, the holders cannot be affected by the result of this suit: that result can neither enlarge nor diminish their claims. If Jordan recovers, that recovery does not enure to their benefit, and cannot be applied as a credit on their claims. If the rights of Lowe's creditors cannot be affected, it necessarily follows that Lowe's rights cannot be affected: his rights and liabilities can be affected only so far as the rights and liabilities of his creditors are affected.

WALKER, J.—In support of the demurrer it is contended, that the agreement to pay Jordan, in consideration of his consent to the making of the deed, and to the preference of Hatton over himself and the creditors to whom he was bound, would, in the end, enure to the benefit of Lowe; and that the contract, therefore, covertly reserves a benefit to an

insolvent assignor. From this argument the conclusion is deduced, that the agreement was unlawful, because its purpose was to accomplish by indirection that which could not be accomplished directly, as settled by repeated decisions of this court.—Wiley, Banks & Co. v. Knight, 27 Ala. 336 ; West, Oliver & Co. v. Snodgrass, 17 Ala. 549 ; Grimshaw & Brown v. Walker, 12 Ala. 101 ; Gazzam v. Pointz, 4 Ala. 378 ; Montgomery's Ex'rs v. Kirksey, 26 Ala. 172. This argument is bottomed on the assumption, that in a suit by Jordan, for reimbursement of money paid by him as the surety or endorser of Lowe, the latter might claim a credit equal in amount to the sum paid Jordan on this contract. If the contract of Hatton had been to pay money on the debts of Lowe on which Jordan was bound, or to pay money to Jordan with which to discharge those debts, for a consideration moving from Lowe, it would follow that Lowe would be the real ultimate beneficiary from the recovery against the defendant, because the surety can recover from his principal only what he has actually paid.— Burge on Suretyship, 358, 359. But such is not the case here. It is an independent contract, for the payment of money to Jordan, upon his consent to the preference in the deed of the promisor to himself. The promise is to Jordan alone, and the consideration moves from him alone. It is a contract in which Lowe does not participate, and from which he could neither gain nor lose anything. For these reasons, Lowe could not be entitled to the benefit of any money which Jordan might receive under the contract.

The case of Kissam v. Edmonston, 1 Iredell's Equity R. 190, cited by the counsel for appellants, is not analogous to this. In that case, the debtor extorted from his creditor, as the terms upon which a security should be provided, that the creditor should divide his debt into two equal parts ; for one of which parts the debtor should execute his note to a third person, for the benefit of his wife and children, and for the other should give his note to the creditor ; and should make a deed of trust on his property as a security for the two notes. The note and security for the debtor's wife and children were held to be fraudulent. That case is distinguishable from this. In that case, the debtor was the contracting party, and secured an appropriation of half the debt, with a security for

its payment, to his wife and children ; which was deemed, in effect, a provision for himself. In this, the debtor is not the contracting party ; no diminution of the extent of his liability to his creditor is stipulated for ; neither himself, nor any selected object of his bounty, is provided for ; and, after expressing his own desire to prefer a particular surety, he submits that preference, which he had at that time an undoubted right under the laws of this State to make, to the control of him whom he desired to prefer ; and the beneficiaries to the deed arrange among themselves by a contract with which he does not appear, from the declaration, to have any connection, a postponement of the surety whom he had intended to prefer. In such an arrangement, we cannot detect any reservation of a benefit to Lowe, nor perceive how he is ultimately to receive the benefit of the promise made to Jordan.

It is argued, that the tendency of the contract was to wrong and defraud the creditors to whom Jordan was bound as the surety of Lowe, and also his co-sureties. If Jordan was insolvent, or unable to pay the debts upon which he was surety, the effect of the contract would be to injure the creditor ; because, in that event, Jordan would stand in the attitude of diverting, by his consent, for a consideration personal to himself, from the creditor, a means of payment which he would otherwise have received. It is not necessary, and we therefore do not stop to inquire, what judgment the law would pronounce upon the transaction, if the declaration averred that Jordan was insolvent. If, on the other hand, Jordan was entirely solvent, and able to pay the debts to the amount of $150,000 upon which he was bound, the postponement of those debts in the deed could not injure the creditors; because, if they could not realize their money from the deed, they could make it out of Jordan. Upon the hypothesis of Jordan's ability to pay the debts, the perils of his suretyship were vastly increased by his consent to the preference of Hatton; but it is not perceived that the creditor could be injured. It is not averred that the creditors could not have made their money out of Jordan, and we cannot by intendment add that averment.

No question arises, as to whether the tendency of the

contract was to wrong Jordan's co-sureties, or the other endorsers on the paper endorsed by him. The declaration does not disclose that there were any other sureties or endorsers bound with Jordan.

The contract is not a *nudum pactum*. The preferred creditor is benefited, and the surety who consents to the preference and to the postponement of the debts for which he is bound, is injured by an increase of his hazard, resulting from the waiver of an opportunity to have the debts secured. Hend v. Holdship, 2 Watts, 104 ; S. C. 1 U. S. Digest, 100, § 69, ; Story on Contracts, 352, § 431, second edition ; Chitty on Contracts, 31 and 32, and notes, 8 Am. from 4th London edition.

There is no analogy between this case and the cases of secret agreements for undue advantage to some of the creditors in composition deeds. Such deeds contain an agreement by the creditors to release the debtor from so much of the debt as is not paid out of the effects assigned. The assent of each creditor is supposed to be influenced by the conduct of the rest, and each to act upon the supposition that there is perfect good faith among them. It is therefore regarded as a fraud for one creditor to stipulate, without the knowledge of the others, for a benefit outside of the composition deed. Here there is no dependency of the acts of the several creditors upon each other, and no secret arrangement is made with the debtor, and no provision of a benefit to Jordan from him.— Clark v. White, 12 Peters, 199 ; 1 Story's Eq. Ju. 406, § 378; Story on Contracts, 115, § 184, and note ; Knight v. Hunt, 5 Bing. 432, (15 E. C. L. 488.)

No principle of public policy or morality is infringed by an arrangement among the common creditors of an insolvent debtor, about to make a conveyance to secure them, that he shall prefer the one, and postpone the other. The law applicable to this case allowed a debtor to discriminate among his creditors, and yet that discrimination might be induced by motives of caprice, favor, or affection. A discrimination pre-arranged among the beneficiaries, and adopted by the debtor, cannot suffer in the contrast with one governed alone by the judgment or feelings of the debtor.

It results from the views above expressed, that in our judgment the declaration was sufficient.

2. The court properly refused to grant to the defendant oyer of the deed made by Lowe. The instruments of which the defendant may demand oyer are those of which the plaintiff would have been compelled at common law to make profert. The deed was not the foundation of the suit. The breach of a contract outside of the deed is the gravamen of the action. The deed is mere inducement. For these reasons, the plaintiff would not have been bound at common law to make profert of the deed, and the defendant is not entitled to oyer.— Gould's Pleading, 444, chap. 8, § 47 ; 1 Chitty on Pleading, 430, 431, 432, 365.

3. It is a sequence from the conclusions above expressed in reference to the demurrer to the declaration, that Lowe was not incompetent to testify for the plaintiff, upon the facts stated in the declaration. But the facts upon which the competency of Lowe depended, as set forth in the bill of exceptions, are not identical with those averred in the declaration. The court had before it, when it passed upon this question, several additional facts; but the only one which it is necessary to notice in this connection, is, that there were other sureties and endorsers bound with Jordan. In determining the effect of this last fact upon Lowe's competency, it may be conceded (although it is by no means clear), without affecting the result, that the co-sureties of Jordan would be entitled, if sued by him for contribution, to diminish his recovery by the amount which he may get in this suit; and that in the event those cos-ureties should sue Lowe, he could restrict their recovery to the amount paid Jordan, as lessened by the defense set up on account of the money received by him from this suit.— Under the concessions thus made, Lowe would only be advantageously affected by Jordan's recovery in this suit, in the contingency that Jordan should pay, or has paid, more than his co-sureties, and should sue them for contribution, and they should diminish his recovery by the amount received from this case; and in the farther contingency that they should then sue Lowe for reimbursement. An interest depending upon such contingency is too remote to disqualify the witness. Massey v. Ragan, 6 Ala. 648 ; The State v. Truss, 9 P. 126.

It does not appear from the bill of exceptions that the co-sureties of Jordan have paid, or ever will pay, anything upon the liabilities on which they are bound with Jordan. It is therefore unnecessary to consider the question of Lowe's competency upon the hypothesis of such payment; but we do not perceive how, if such were the case, it could change the result.

There being no error in any of the rulings of the court below, shown in the record, the judgment of the circuit court is affirmed.

This suit was instituted, and the contract upon which it is brought was made, before the adoption of the Code; and the foregoing opinion is therefore made without reference to its provisions.