## Henry *et al.*, Ex'rs, *v.* Murphy & Co.

### *Garnishment.*

1. *Garnishment; upon what operates.*—In the absence of fraud, a garnishment operates only on the legal rights of the defendant in judgment or attachment; if a demand due or owing the defendant is sought to be subjected, it must be of such a character that he could have maintained debt, or *indebitatus assumpsit* on it.

2. *Promise; what valid.*—An insolvent debtor, A, offered to surrender his assets to creditors, to obtain a discharge. Afterwards M and other of the creditors met together and agreed in writing among themselves to accept from M, who was one of the largest creditors, fifty cents on the dollar and release A. This agreement was submitted by M to all other creditors, who joined in it, except C. who refused to join in it. Afterwards A made a conveyance of his entire estate to M, upon conditions set forth in the agreement among creditors (which are recited and assented to by him in the conveyance). C obtained judgment against A, and garnished M to answer what he was indebted to A. On the trial, M, having denied indebtedness, C offered oral proof that at the time A made the conveyance, and as part of the consideration, M promised to

Vol. LIV.

[Henry et al., Ex'rs, v. Murphy & Co.]

pay C's debt in full, and but for this promise A would not have executed the conveyance. The promise not being shown by the written agreement between the creditors or by the conveyance, the court rejected it. *Held :*

1st. The promise is valid and supported by a sufficient consideration, and if the creditor elected to accept it, he could maintain an action upon it in his own name, and if he repudiated it, the promisee may maintain an action of *indebitatus assumpsit* on it.

2d. The election of the creditor not to accept the promise is made, when with a full knowledge of it, he resorts to and enforces his remedies against the debtor.

3d. The oral proof only shows an additional consideration, to that expressed in the deed and not inconsistent with it; and does not vary the nature or legal effect of the deed, or enlarge its operation, or change the relation of the parties to it.

4. The agreement and conveyance, strictly speaking, do not constitute a composition, but a sale and transfer by the debtor of his property in consideration that the creditor, to whom the conveyance was made, would release him from all his debts and pay a certain per cent of his liabilities. The agreement was not between the debtor and all his creditors, and he was not a party to the agreement among the creditors, and no benefit accrued to him from the promise to pay which could prejudice the creditors. Hence, the conveyance is not subject to the rule that where a debtor, in embarrassed circumstances makes an agreement with creditors to pay a certain proportion of their claims, and privately agrees to give better or other security to others, the conveyance is void.

4. *Garnishee; when may avail himself of rights which the debtor could not exercise.*—Although a conveyance entered into, to hinder, delay or defraud creditors, is not void between the parties to it, and the garnishing creditor can in general avail himself only of the legal rights of the debtor against the garnishee, there is an exception where the garnishee holds effects of the debtor under a fraudulent conveyance. In such a case, although the conveyance is valid between the parties to it, the garnishing creditor may set up its invalidity.

5. *Fraud; of what creditor can avail, when attacking conveyance by debtor.*— The fraud of which a creditor can avail himself, when assailing a conveyance or transfer by his debtor, must be actual, not constructive fraud on the debtor, which could be asserted by him as a ground of equitable relief against it.

6. *Same.*—The fraud which the creditor may set up at law is actual fraud against creditors, denounced by sections 1861, 1865 and 1866 of the Revised Code. If the conveyance was not intended to hinder, delay or defraud creditors of the grantor, and made in good faith on valuable consideration, and not offensive to the foregoing sections of the Revised Code, an attaching creditor cannot assail it, because the grantee induced the grantor to enter into it by fraudulent representations which he did not keep, and did not intend to keep when he made them.

7. *Garnishee; attorney's fees allowed.*—Our statutes prescribe the costs which may be taxed against the unsuccessful party in actions at law, and this is the limit of their recovery. When the garnishee is the successful party, he is entitled to recover as part of the costs the attorney's tax fee, but the court has not power to allow him the compensation which he may be bound to pay his attorneys.

APPEAL from Circuit Court of Butler.

Tried before Hon. P. O. HARPER.

This was a garnishment suit commenced originally by J. C. Caldwell, a judgment creditor of J. R. Abrams, surviving partner of the firm of J. R. & H. S. Abrams, against S. J. Murphy & Co., the appellees. Caldwell having died, his executors were made parties plaintiff in his stead.

The appellees having answered, admitting only $28.50 in-

debtedness and denying possession or control of any property, Caldwell contested the answer, and by agreement the issue thus raised, was made up in the form of a complaint, containing, among other things, two special counts, in substance, as follows:

That on the 17th of March, 1868, the said S. J. Murphy and other creditors of the late firm of J. R. & H. S. Abrams, met and entered into a written agreement, in substance as follows: That whereas, the creditors signing the agreement had submitted to them and had thoroughly examined the assets of said firm of J. R. & H. S. Abrams and its liabilities, and S. J. Murphy & Co. (representing also the claim of W. W. Allen & Co., the two together controlling about one hundred and ten thousand dollars of the indebtedness against said late firm, and J. R. Abrams as surviving partner), had proposed to pay fifty cents on the dollar of principal and interest up to April 1st, 1868; and whereas, the creditors signing it thought this was more than could be realized from any assignment, &c., they, therefore, covenanted with said S. J. Murphy & Co., to receive in discharge of their debts the proposition made by Murphy & Co., said proposition being submitted only on condition that all the creditors of said late firm and J. R. Abrams accept it by the 10th day of April following; that Abrams refused to consent to the execution of said instrument unless Murphy & Co. would agree to pay his debt to Caldwell in full, whereupon Murphy & Co. did agree so to pay it, at the time of execution of said agreement to procure the assent of Abrams thereto; that Abrams insisted that said Murphy & Co. should insert the same in the agreement, but said firm of Murphy & Co. fraudulently, and for the purpose of deceiving said J. R. Abrams, and procuring his assent to the agreement, omitted to insert or have inserted in the writing the said promise of the said S. J. Murphy & Co., to pay said debt in full, by means whereof they procured the execution of the instrument as it is, and are, therefore, bound by their promise to pay said debt in full, and said Murphy & Co. are indebted to said Abrams for the amount of the debt.

Another special count averred the facts above, and was in every respect like it, except referring to the agreement above set out, it alleges "that said Murphy & Company made said promise to Abrams to pay said debt in full, to procure the assent of said J. R. Abrams to the execution of said agreement, the consideration of which said agreement moving to said Murphy & Co., was that said J. R. Abrams, for himself and as surviving partner of J. R. & H. S. Abrams, should sell, convey, transfer, and deliver to said S. J. Murphy & Co.,

all the property, real and personal, and assets of said J. R. & H. S. Abrams, and of said J. R. Abrams individually, which contract has been fully executed on the part of said J. R. Abrams.

The garnishee demurred to these special counts, assigning as grounds: 1st, That the facts stated show no right in plaintiff to recover. 2d, That the promise therein set forth does not enure to the benefit of plaintiff's testator. 3d, The promise relied on was a fraud on the other creditors, and no action can be maintained on it. 4th, The promise was void under statute of frauds. 5th, The fraud charged against the garnishees gives plaintiff no right of action.

The court sustained the demurrer to these counts, and issue was joined on the allegations that plaintiff had property, or was indebted, &c.

Plaintiff then introduced the agreement between the creditors of J. R. & H. S. Abrams, the substance of which is set forth in the special counts. After reading this agreement in evidence, "plaintiff offered to prove by oral evidence that Abrams, who was present at the execution of the same, and required as a condition precedent that S. J. Murphy & Co. should pay in full the debt of John C. Caldwell, and that S. J. Murphy, who represented S. J. Murphy & Co., did then agree to pay the debt in full, and Abrams then consented to the execution of the agreement." Caldwell afterwards reduced his debt to judgment against Abrams, and said judgment is the foundation of the garnishment proceeding in this case. Plaintiffs further offered " to prove by parol evidence that Abrams insisted that said promise to pay should be inserted in, and made part and parcel of said agreement, and that Murphy said it was unnecessary to do that, that S. J. Murphy & Co. would pay the debt in full, and that said promise to pay the debt was left out of the agreement at the instance and request of S. J. Murphy." It was in evidence that in accordance with said agreement, Abrams executed to S. J. Murphy & Co. a deed, which, after reciting the above agreement, conveyed to them all the assets, real and personal, of the firm of J. R. & H. S. Abrams, and of J. R. Abrams, and S. J. Murphy & Co. agreed to assume the debts to other creditors, and discharge Abrams from all further liability. Plaintiff then offered " to prove by Abrams that he did not know at the time of the execution of the deed, and had no notice or intimation that Murphy & Co. would fail to comply with the promise of S. J. Murphy, and he would have refused to enter into it but for said promise."

This oral evidence the court refused to admit, on the

[Henry et al., Ex'rs, v. Murphy & Co.]

ground that "it contradicted the two written instruments," and plaintiff excepted.

Plaintiffs then stated, that they "relied on the foregoing facts, offered to be proved as aforesaid, together with other facts which they expected to prove, to show fraud in the execution of said instrument, and that the garnishees, or S. J. Murphy, who represented them, intended at the time he procured the execution of said instruments, in the manner above stated, to deceive and defraud Abrams, by procuring their execution, and then refuse to pay the Caldwell debt. The court then said that as fraud in the execution of said instruments would be insisted on, the evidence might be introduced, and the facts heretofore proposed to be proved, were proved, together with other facts tending to show that the execution of the instruments was fraudulently procured by S. J. Murphy, for the benefit of S. J. Murphy & Co. But there was also evidence tending to rebut the charge of fraud. The evidence also showed that the consideration of said instruments moving to Murphy & Co. was that Abrams for himself, and as surviving partner of J. R. & H. S. Abrams, should convey and deliver all the assets of every description of Abrams individually, and of the firm, to them, and that Abrams had faithfully complied with his part of the agreements, without any knowledge that Murphy & Co. would refuse to pay the Caldwell debt. There was no evidence showing, or tending to show, that any creditor of Abrams or of the firm of J. R. & H. S. Abrams, had ever attacked in any legal proceeding the agreement or the deed to Murphy & Co., made in pursuance of it. But the evidence showed Caldwell was not present, and had no participation in any of the transactions between Abrams and Murphy & Co.

The court then charged the jury "that if they should believe from the evidence that the garnishees, S. J. Murphy & Co., had procured the execution of said instrument and the conveyance, transfer and delivery of said property, by the said Abrams, to them, by *covin*, fraud and deceit, that that would not authorize them to find a verdict for the plaintiffs, because said transaction between the said J. R. Abrams and the said S. J. Murphy amounted in law to a general assignment for the benefit of all the creditors of said J. R. Abrams, and of the said J. R. & H. S. Abrams." To this charge plaintiffs excepted. The court further charged the jury, "that even if they should find from the evidence that S. J. Murphy & Co. had obtained from Abrams by fraud, money or money and property, or either, before the service of the writs of garnishment to an amount greater or less than the plaintiffs' judgment against Abrams, that still they could

[Henry et al., Ex'rs, v. Murphy & Co.]

find no verdict for the plaintiffs." Plaintiff reserved an exception to this charge.

After the rendition of judgment upon the verdict, counsel for the garnishees moved the court to allow them a reasonable fee for preparing their answers. Plaintiffs resisted said motion and objected to its allowance. But the court, against their objection, heard evidence on the motion, and allowed a fee of fifty dollars to be taxed as costs. A similar motion was made by the garnishee's counsel for an allowance of a fee for conducting the defense, and against the objection and exception of plaintiffs, the court allowed an additional fee of one hundred and fifty dollars to be taxed as costs. The various rulings of the court to which exceptions were reserved, are now assigned as error.

JUDGE & HOLTZCLAW, and WATTS & WATTS, for appellants.

HERBERT & BUELL, contra.

BRICKELL, C. J.—A garnishment is a legal proceeding, assimilated to an attachment, intended to reach debts, or other *choses in action*, the property of a debtor, not capable of seizure by execution or attachment, or to compel the discovery of effects, capable of seizure, in the possesion of a third person. Fraud not intervening, it operates only on the legal rights of the defendant in attachment, or judgment—such rights as he could enforce by action at law in his own name. If it is a demand due or owing the defendant, which is sought to be subjected, it must be of a character on which he could maintain an action of debt, or of *indebitatus assumpsit.*—1 Brick. Dig. 175, §§ 313-314. If it is property in the possession of the garnishee, which is sought to be subjected, it must be such as is subject to levy and sale, under an execution.—Ib. § 315.

Conforming to the current of American authorities, the decisions of this court have firmly established the doctrine, that if one person makes a promise to another for the benefit of a third, such third person may maintain an action upon the promise, though the consideration does not move from him.—*Huckabee v. May*, 14 Ala. 263; *Mason v. Hall*, 30 Ala. 599. It is generally true, that an *entire stranger* to the consideration, one who has taken no trouble or charge on himself, and has conferred no benefit upon the promissor, cannot maintain an action in his own name upon the promise. There is a want of privity between him and the promissor. But in the case suggested, the law, operating on the act of

the parties, creates the duty, establishes the privity and implies the promise and obligation on which the action is founded.—*Brewer v. Dyer*, 7 Cush. 339; 2 Greenl. Ev. § 109. If he, for whose benefit the promise is made, elects not to accept it—if it is made to extinguish a debt, or a liability of the promissee, and the person to whom it is due prefers to retain such debt or liability and pursue his remedies theron, the promissee can maintain an action on the promise. The election of the person for whose benefit the promise is made, is exercised, when he resorts to and enforces his remedies against the promissee, with full knowledge of the promise.— *Bohannan v. Pope*, 42 Maine, 93; *Brewer v. Dyer, supra*, 2 Greenl. Ev. § 109; Metcalf on Contracts, 211.

It is certainly true that a creditor, by garnishment, can reach only debts or demands, recoverable by his debtor. He cannot convert the remedy into a means of enforcing any cause of action, vesting in him only, or any contract or promise on which the law authorizes him to maintain an action in his own name.—*Thompson v. Wallace*, 3 Ala. 132. The debt or demand recoverable by this process, must be due to the debtor, and one on which the debtor could maintain debt, or *indebitatus assumpsit*. In this case, however, the promise of the garnishees, if made as supposed in the pleadings, though originally capable of acceptance by the garnishing creditor, and if accepted, of enforcement by an action in his own name, had not been accepted. The creditor, with full knowledge of the promise, pursued his legal remedies against Abrams the debtor, reduced his debt to judgment, and then resorted to the process of garnishment against the promissors as his debtors. Assuming the promise to have been made, and not void because of fraud, or a want of consideration, being a simple verbal contract, Abrams could have enforced its recovery by an action of *indebtitatus assumpsit*. This being true, the garnishing creditor could by garnishment subject it to the payment of his debt.

This brings us to the inquiry as to the validity of the promise. The sufficiency of the consideration, on which it is based, cannot be doubted. A consideration is sufficient if it arises from any act of the plaintiff, from which the defendant, or a stranger, derives any benefit, however small, if such act is performed by the plaintiff, with the assent, express or implied, of the defendant; or by reason of any damage, or any suspension or forbearance of the plaintiff's rights at law or in equity. In *Hind v. Holdship*, 2 Watts, 104, a promise by the defendant, made to a debtor, to pay particular debts owing by him, in consideration of his mak-

ing an assignment for the benefit of his creditors, was held a valid promise, supported by a valuable consideration, entitling those for whose benefit the promise was made, to recover to the full extent of their debts, and not merely what they could have received if parties to the assignment. In *Hatton v. Jordan*, 29 Ala. 266, the plaintiff and defendant were sureties and endorsers for an insolvent debtor, who was about making an assignment for the benefit of creditors, and who refused to make any assignment of which the plaintiff did not approve, and which did not place him in the preferred class of creditors; in consideration that the plaintiff would consent to be postponed, and that the debtor would make an assignment preferring him, he promised to pay the plaintiff a specified sum. The assignment was made, and it was held, the promise was supported by a sufficient consideration, not violative of public policy, and not a fraud on other creditors. The court was referred to the authorities which have settled the principle, that when an insolvent, or embarrassed debtor, is entering into a composition with his creditors, *any private agreement between such debtor and one of the creditors who professes to join in the general arrangement,* that the former, or a third party for him, shall pay a further sum of money, or give a better or further security than such as is provided for other creditors, is void as a fraud on them. Admitting the principle, the court distinguished the case from cases falling within it. The distinguishing fact was, that the debtor was not a party to the agreement; no benefit accrued to him from it, and there was no dependency of the acts of the several creditors upon each other. The principle itself applies only as to creditors who are parties to the composition. The true ground on which it rests is that each creditor is induced into the composition on the supposition that all are to share and suffer in equal proportion—that there is to be an equality of loss and benefit. It has no application when each creditor acts for himself, and it may be in opposition to every other creditor.— *Clarke v. White*, 13 Peters, 200. In this case the creditor for whose benefit this promise was made, was not a party to the arrangement which is treated as a composition, never consented to take under it nor to discharge the debtor on its terms. He did not act in concert with those who were parties to it, nor influence their action either directly or indirectly. He preferred to, and did retain his debt as a demand against the debtor, with whom the garnishees were dealing. The authorities to which reference has been made would have supported an action by him against the promissor, founded on the promise, if he had elected to pursue it. Not electing his remedy

against the promissors, the debt remains a substituting demand against the promisees, not barred or discharged by the arrangement which was made.

The contract relied on is not strictly a composition. It is a sale and transfer by the debtor of his property to a creditor, in consideration that the creditor will release him from liability, and will pay one-half of all his debts, but one, and pay that one in full. It was not an agreement between the debtor and all his creditors. The proposition to his creditors did not proceed from him, but from the garnishees, who proposed to become the alienees and transferrees of his property. He was not a party to it, nor to its acceptance by the creditors who did accept it. There was no agreement made or contemplated between the debtor and his creditors—the agreement made and contemplated was between him and the garnishees, and was a sale and transfer. The rule on which reliance is placed by the garnishees, is limited in its application to a composition or arrangement, made by a debtor with his creditors, and to secret agreements between him and one or more of such creditors, whereby a larger benefit is secured, or promised to such creditors, than is given to others.—2 Chit. on Con. 1050; 1 Story on Con. § 526. The agreement or promise now sought to be enforced, was a part of a contract of bargain and sale, by the debtor to one creditor, he not having entered into any composition or arrangement with his creditors, but whatever arrangement there was with them, being made by his vendee or transferree. The promise sought to be enforced, is not made by him, but to him. That promise does not secure to him any benefit, which could prejudice his creditors; nor does it deprive the creditors who entered into the arrangement of any benefit for which they contracted. It is nothing more, under the facts as disclosed in the record, than a promise by a vendor to pay a debt of the vendee, in part satisfaction of the price of the property sold. The creditor of the vendee not having acted on the promise and enforced it, the right of the vendee to its performance cannot be questioned. It cannot be said no damage resulted to the vendee from the non-performance of the promise, because the property sold was all applied to the payment of other debts, and was not equal in value to such debts. The benefit to accrue to him from the arrangement, that for which he contracted, and sustained the detriment of parting with the title and possession of his property, was in part the full payment of this debt, so that he would be discharged therefrom, and the creditor to whom he supposed himself under peculiar obligations, satisfied. If he had entered into

[Henry et al., Ex'rs, v. Murphy & Co.]

a composition with his creditors, by which they agreed to release him, on a partial payment, and one creditor holding negotiable paper, or having held it, and representing himself as still its holder, accepted the composition, having transferred, or subsequently transferring the paper, whereby the debtor was compelled subsequently to pay it in full, he could recover of the creditor to the full amount of such payment. It would be no answer for him that the debtor was under a legal and moral obligation to pay his debt in full, and that the subsequent payment was only a satisfaction of the obligation. Against the obligation, by his acceptance of the composition, he impliedly assumed to protect the debtor, and failing, he must answer for the loss sustained.—*Howley v. Beverly*, 6. Man. & Gran. 221, (41 Eng. Com. Law); *Harlow v. Foster*, 53 N. Y. (8 Sickels), 385. The promise here was part of the consideration of the bargain and sale, and transfer of property, real and personal. No question of the adequacy of the consideration can arise. It was a matter of mere volition with the vendor to fix the price, and with the vendee to pay it or not. With this volition, in the absence of fraud, the law does not interfere, leaving each to judge and determine for himself as to the benefit to be derived or the detriment sustained. We hold, if the garnishees promised the judgment debtor that they would pay the debt due the plaintiffs in the garnishment, and this promise formed a part of the consideration on which the debtor made the conveyance and transfer to the garnishees, the promise is valid and supported by a sufficient consideration. The plaintiffs not having elected by suit to enforce this promise, but electing to pursue the debtor on the original debt, the debtor could maintain *indebitatus assumpsit* for a breach of the promise. As he could maintain that remedy for a breach of the promise, the demand is of the nature and character which may be reached by garnishment.

Parol evidence of the promise does not offend the rule excluding parol cotemporaneous evidence, to contradict or vary the terms of a valid instrument. It is only evidence of an additional consideration than that expressed in the deed, and not inconsistent with it. It does not vary the nature or legal effect of the deed, neither enlarges or diminishes its operation, nor changes the relation of the parties to it. It is said by Stone, J., in *McGehee v. Rump*, 37 Ala. 656, "the decided weight of the modern authorities, as our after citations will show, is that the consideration clause in a deed is open to the influence of parol proof, except for two purposes; first, it is not permissible for a party to the deed to prove a different consideration, if such change vary the legal effect

of the instrument; and second, the grantor in a deed, who acknowledges the receipt of payment of the consideration, will not be allowed, by disproving that fact, to establish a resulting trust in himself."—*Thomas v. Barker*, 37 Ala. 392. In *Hair v. Little*, 28 Ala. 247, the deed purported to have been made on a valuable pecuniary consideration, in hand paid. A part only of the consideration was paid in money; the balance was promised to be paid in discharge of debts due from the grantor. Parol evidence of the promise was decided to be admissible, as it did not vary the legal effect of the deed, and was not inconsistent with the consideration expressed, which was a *valuable consideration.—Eckles & Brown v. Carter*, 26 Ala. 563; *Johnson v. Boyles*, ib. 576. Parol evidence of the promise not varying or contradicting the deed was admissible.

A conveyance entered into to hinder, delay and defraud the creditors of the grantor, is valid and operative between the parties to it. The grantor is estopped from setting up his fraud to defeat or avoid the conveyance. The principle that a garnishing creditor can avail himself only of the legal rights of his debtor against the garnishee, and that his recovery is limited to the recourse of the debtor, is subject to an exception when the garnishee has possession of the effects of the debtor under a fraudulent transfer. There, though the transfer is valid against the debtor and he cannot be heard to gainsay it, the creditor may in this proceeding, as well as in any other, assert its invalidity.—*Richards v. Hazard*, 1 Stew. & Port. 139; *Hazard v. Franklin*, 2 Ala. 347; *Price v. Masterson*, 35 Ala. 483; *Hall v. Heydon*, 41 Ala. 242; Drake on Attachment, § 458; *Lamb v. Stone*, 11 Pick. 527. The fraud of which a creditor may avail himself when assailing a transfer, or conveyance by his debtor, is not a constructive fraud on the debtor, which he could assert as equitable ground of relief against the transfer or conveyance. It is an actual fraud directed against purchasers or creditors denounced by the statutes.—R. C. §§ 1861, 1865, 1866. The conveyance or transfer may not be intended to defraud creditors—it may have been founded on a valuable consideration, yet, subject to trusts, or uses, a diversion from which, though not inconsistent with the terms of the deed, would be a fraud on the grantor, against which a court of equity would relieve. A court of law would not take cognizance of such a fraud. The only fraud in a deed of which a court of law takes cognizance, as between the parties to it, relates to its execution.—*Swift v. Fitzhugh*, 9 Port. 39; *Morris v. Harvey*, 4 Ala. 300; *Thompson v. Drake*, 32 Ala. 99. Then, the evidence would show the deed never had any binding force,

[Henry et al., Ex'rs, v. Murphy & Co.]

because never assented to by the grantor. Of such a fraud, doubtless an attachment creditor could take advantage, and this would be an *actual*, as distinguished from a *constructive* fraud. But of *constructive frauds*, such as may arise from a breach of the promises of the grantee—the diversion of the conveyance from the uses intended, or a violation of confidence reposed, the creditor could not avail himself. If the conveyance was not intended to hinder, delay or defraud the creditors of the grantor—if it was made in good faith, on a valuable consideration, and is not offensive to either § 1861 or 1866 of the Code, the attaching creditor could not avoid it, because the grantee had induced the grantor into it by promises he did not keep, and did not intend to keep when he made them. If, then, the appellants, not proceeding against the appellees as the debtors of Abrams, because of the promise alleged to have been made him, to pay the debt due appellants, assail the transfer and conveyance as fraudulent, they must rely on fraud on creditors, or an actual fraud on the grantor, as we have defined them.

We shall not extend this opinion by making an application of its principles to the various rulings of the circuit court. They were not consistent with the views we have expressed, and what we have already said will enable the court and parties in the further proceedings, to conform to these views. The cause appears to have been before this court at the January term, 1873, but we have not been able to obtain the opinion then pronounced. Hence, we cannot say how far we may have departed from or conformed to it.

We have not been referred to, nor are we aware of any law, which authorized the circuit court to ascertain the reasonable compensation of the attorneys of the garnishees, and direct its taxation as costs recoverable from the appellants. At common law, no costs were due or recoverable either from the plaintiff or defendant. The statute with us prescribes the costs which may be taxed, and is the limit of their recovery. The garnishees being the successful party, were entitled to recover of the appellants the taxable costs of the suit, of which the attorney's taxed fee, as prescribed by the statute, is a part. But they were without right to recover the compensation they may be bound to pay their attorneys.

The judgment must be reversed and the cause remanded.